**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

| | |
|---|---|
| **FINANCIAL STRATEGY GROUP, PLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **No. 14-2154** |
| ) | |
| **CONTINENTAL CASUALTY COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |

---

**ORDER**

---

Before the Court is Defendant Continental Casualty Co.'s ("Continental") March 20, 2014 Motion to Dismiss (the "Motion") filed pursuant to Fed. R. Civ. P. 12(b)(6). (Mot. to Dismiss, ECF No. 14.) On April 16, 2014, Plaintiff Financial Strategy Group, PLC ("FSG") filed a Motion for Partial Summary Judgment, (Mot. for Partial Summ. J., ECF No. 18,) and a Consolidated Memorandum of Law in support of its Motion for Partial Summary Judgment and in response to Continental's Motion to Dismiss, (Resp. to Mot. to Dismiss, ECF No. 19.) On April 25, 2014, Continental filed a Consent Motion for Extension of Time to File a reply in support of its Motion to Dismiss. (Consent Mot., ECF No. 20.) The Court granted the extension, and on May 19, 2014, Continental filed a Consolidated Memorandum in reply to FSG's response and in response to FSG's Motion for Partial Summary

Judgment.  (Resp. to Mot. for Partial Summ. J., ECF No. 22.)  On May 28, 2014, FSG filed a reply in support of FSG's Motion for Partial Summary Judgment.  For the following reasons, Continental's Motion to Dismiss is GRANTED and FSG's Motion for Partial Summary Judgment is DENIED.

## I.   Background

On January 31, 2014, FSG filed a Complaint in the Chancery Court of Shelby County, TN.  (Compl., ECF No. 1.)  The case was removed on March 5, 2014.  (Id.)  The Complaint alleges that FSG and Continental entered into an agreement in which Continental agreed to provide professional liability insurance coverage for FSG's accounting practice for the period beginning on September 17, 2008, and ending on September 17, 2009.  (Id. at 2.)  Continental issued policy number 188103279 (the "Policy").  (Id.)

The Policy contained numerous exclusions, listed in Section V.  (Policy, ECF No. 1-1, at 21.)  An "Exclusionary Endorsement for Tax Shelter Losses" (the "Tax Shelter Exclusion") was included as an amendment to Section V.  (Id. at 55.)  FSG has attached a copy of the Policy, together with all amendments, to the Complaint.  (Compl., ECF No. 1 ¶ 6.)

FSG alleges that it was sued by R. K. Lowry, Jr. on May 19, 2009, in Texas state court ("Lowry Petition") and by Shahid R. Khan on July 6, 2009, in Illinois state court ("Khan Complaint")

(collectively, the "Underlying Complaints"). (Id. ¶¶ 7-8.) FSG has attached copies of the Underlying Complaints to its Complaint. (Id.)

On August 31, 2009, Continental notified FSG that it would neither defend nor provide coverage for the claims stated in the Underlying Complaints. (Id. ¶ 9.) FSG alleges that Continental's refusal to provide coverage for the the Underlying Complaints is a material breach of the Policy. (Id. ¶ 14.) FSG also alleges that Continental has "breached implied covenants of good faith and fair dealing." (Id. ¶ 15.)

## II. Jurisdiction and Choice of Law

Under 28 U.S.C. § 1332(a), this Court has original jurisdiction of all civil actions between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs". 28 U.S.C. § 1332(a)(1). A party seeking to establish diversity jurisdiction for a limited liability company must allege the citizenship of all persons or entities who are members of the limited liability company, including other limited liability companies and persons having membership interests. See Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567, 579 (2004) (citing Carden v. Arkoma Associates, 494 U.S. 185, 195 (1990)); V & M Star, LP v. Centimark Corp., 596 F.3d 354, 356 (6th Cir. 2010) ("limited liability companies 'have the citizenship of each partner or

3

member.'" (quoting Delay v. Rosenthal Collins Group, LLC, 585 F.3d 1003, 1005 (6th Cir.2009))).

Plaintiff FSG is a Tennessee professional limited liability company with its principal place of business in Memphis, Tennessee. (Id. ¶ 1.) FSG has two members, Andrew Shaul and Cliff Paessler, who are Tennessee citizens. (Resp. to Order to Show Cause, ECF No. 25.) Defendant Continental is an Illinois corporation with its principal place of business in Illinois. (Id. ¶ 2.) FSG seeks damages in excess of $250,000.000. (Id. at 6.) The parties are completely diverse, and the amount-in-controversy requirement is satisfied.

In a diversity action, state substantive law governs. See Brocklehurst v. PPG Indus., Inc., 123 F.3d 890, 894 (6th Cir. 1997) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). Where, as here, there is no dispute about the applicable state substantive law, the Court will not conduct a "choice of law" analysis sua sponte. See GBJ Corp. v. Eastern Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998). Tennessee substantive law applies.

## III.   Standard of Review

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true.

4

League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007).

This standard requires more than bare assertions of legal conclusions. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. To survive a motion to dismiss, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." Id. at 1950.

## IV.  Analysis

This case requires interpretation of an insurance contract. Continental argues that the Underlying Claims are excluded from coverage under the Policy by operation of the Tax Shelter

Exclusion.   (Mot. to Dismiss, ECF No. 14.)   FSG argues that the Tax Shelter Exclusion is ambiguous and the Underlying Complaints contain claims that are not within the scope of the Exclusion. (Resp. to Mot. to Dismiss, ECF No. 19.)

Under Tennessee law, the scope of an insurance policy's coverage is a question of law.   U.S. Bank, N.A. v. Tennessee Farmers Mut. Ins. Co., 277 S.W.3d 381, 386 (Tenn. 2009). Insurance contracts are generally interpreted in the same manner and using the same rules of construction as other types of contracts.   Merrimack Mut. Fire Ins. Co. v. Batts, 59 S.W.3d 142, 148 (Tenn. Ct. App. 2001); McKimm v. Bell, 790 S.W.2d 526, 527 (Tenn. 1990).   Tennessee courts consider the policy as a whole and construe its terms "in a reasonable and logical manner."   Batts, 59 S.W.3d at 148.   Courts "should give the policy's terms their natural and ordinary meaning."   Id.   "Where provisions that purport to limit insurance are ambiguous, however, they must be construed against the insurance company and in favor of the insured."   Osborne v. Mountain Life Ins. Co., 130 S.W.3d 769, 773 (Tenn. 2004).

## A.   Missing Words in the Tax Shelter Exclusion

Section V of the Policy is entitled "EXCLUSIONS" and contains a list of claims to which the Policy does not apply. (Policy, ECF No. 1-1, at 21.)   Section V provides that:

This Policy does not apply to:

6

    A.  any claim for bodily injury . . . ;

    B.  any claim for damage to, destruction of, or loss of use of tangible property . . . ;

    C.  any claim based on or arising out of liability assumed under any contract or agreement unless you would have been liable if the contract or agreement did not exist;

    D.  any claim based on or arising out of a dishonest, illegal, fraudulent, criminal or malicious act by any of you . . . ;

    E.  any claim based on or arising out of professional services performed for any entity, including an entity held in a personal trust, if at the time of the act or omission giving rise to the claim, you or your spouse were a director, officer or partner of, or had management responsibilities for, such entity, or the owner of more than a 10% equity interest in such entity;

    F.  any claim based on or arising out of professional services rendered by you as an executor, administrator or personal representative of an estate or as a trustee if you or your spouse are a beneficiary or distributee of said estate or trust;

    G.  any claim based on or arising out of your capacity as . . . an officer, director, trustee, partner or other member of a governing body of an entity, other than the Named Insured . . . ;

    H.  any claim based on or arising out of your capacity as a broker or dealer in securities . . . ;

    I.  any claim based on or arising out of any anti-trust law violation . . . ;

    J.  any claim based on or arising out of the gaining of any personal profit or advantage to which you are not legally entitled in the rendering of professional services in your capacity as a personal fiduciary.

(Policy, ECF No. 1-1, at 21-22.)

The Tax Shelter Exclusion is included as an amendment to Section V and provides that:

based on, arising out of or in connection with the design, recommendation, referral, sale or promotion of any transactions which:

     a.    are determined by the IRS or state tax authorities to be a tax avoidance transaction or is substantially similar to abusive tax shelters or listed transactions or are identified as such by notice, regulation, or other guidance under the tax law; or

     b.    any tax transaction that is considered to be a reportable transaction under Treasury Regulation §1.6011-4(b) or any superseding law or regulation.

(Id. at 55.)

FSG correctly notes that the Tax Shelter Exclusion, as read in conjunction with Section V, does not form a complete sentence. (Resp. to Mot. to Dismiss, ECF No. 19.) Continental argues that the only reasonable interpretation of the Tax Shelter Exclusion includes the words "any claim" at the beginning of the clause. (Resp. to Mot. for Partial Summ. J., ECF No. 22.)

Considering an insurance policy as a whole may remedy any potential ambiguity. See Batts, 59 S.W.3d at 148; Rossetto v. Pabst Brewing Co., Inc., 217 F.3d 539, 545 (7th Cir. 2000). The terms of a contract are ambiguous only when "they are 'susceptible to more than one reasonable interpretation.'" Dick Broad. Co., Inc. of Tennessee v. Oak Ridge FM, Inc., 395 S.W.3d 653, 659 (Tenn. 2013) (quoting Allstate Ins. Co. v. Watson, 195 S.W.3d 609, 611 (Tenn. 2006)); see also Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc., 78 S.W.3d 885, 890 (Tenn. 2002)

("A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one.").   "A strained construction may not be placed on the language used to find ambiguity where none exists."   Planters Gin Co., 78 S.W.3d at 891 (internal citations omitted).

The only reasonable interpretation of the Tax Shelter Exclusion includes the words "any claim" at the beginning of the Exclusion.  The Tax Shelter Exclusion is an amendment to Section V of the Policy.  (Policy, ECF No. 1-1, at 55.)  Because the Court is instructed to construe the Policy "as a whole in a reasonable and logical manner," Batts, 59 S.W.3d at 148, the Tax Shelter Exclusion must be analyzed in conjunction with Section V of the Policy.  Section V contains the prefatory language, "This Policy does not apply to," and then lists the various exclusions, lettered "A" through "J."  (Policy, ECF No. 1-1, at 21-22.)  All 10 exclusions listed in Section V begin with the words "any claim."  (Id.)  Because the Tax Shelter Exclusion is appended to Section V, the "reasonable and logical" reading of the Tax Shelter Exclusion would include the words "any claim," just as the other 10 exclusions do.

Similarity reinforces this interpretation.  The Tax Shelter Exclusion begins with the words "based on, arising out of." (Id. at 55.)  Eight of the 10 exclusions in Section V begin with the words "any claim *based on or arising out of*."  (Id. at 21-22

9

(emphasis added).)   Construing the Tax Shelter Exclusion to apply to anything other than "any claim based on [or] arising out of" would be illogical considering the Policy as a whole.

Because there is no reasonable interpretation other than including the words "any claim" at the beginning of the Tax Shelter Exclusion, the missing words do not create ambiguity. See Dick Broad., 395 S.W.3d at 659; Paul v. Ins. Co. of N. Am., 675 S.W.2d 481, 484 (Tenn. Ct. App. 1984) ("There must be two reasonable constructions of the language before the Court can find ambiguity and construe the policy toward the insured.").

The Tax Shelter Exclusion should read, "This Policy does not apply to . . . [any claim] based on, arising out of or in connection with the design recommendation, referral, sale or promotion of any transactions . . . ." (Policy, ECF No. 1-1, at 55.)

**B.   Effectiveness and Heading Arguments**

FSG argues that, because the Tax Shelter Exclusion was not included in the Policy's Declaration or countersigned by Continental, it was not part of the "bargained for exchange" between the parties. (Resp. to Mot. to Dismiss, ECF No. 19 at 5.)  Section VI.G of the Policy provides, "This Policy consists of the Declarations, the Policy form, all endorsements attached to the Policy, the completed and signed application and all supplementary information and statements [FSG has] provided

10

[Continental]." (Policy, ECF No. 1-1, at 24.) The Tax Shelter Exclusion is attached to the Policy and the Policy is signed by both parties. (Id. at 28, 55.) FSG alleges that the document attached to the Complaint as Exhibit A, which includes the Tax Shelter Exclusion, is the Policy. (Compl., ECF No. 1, ¶6. See Policy, ECF No. 1-1 at 55.) FSG asks the Court to disregard its factual allegation. When considering a motion to dismiss, the Court accepts all well-pled factual allegations of the Complaint as true. Bredesen, 500 F.3d at 527.

FSG also argues that the heading of the Tax Shelter Exclusion, which reads "EXCLUSIONARY ENDORSEMENT FOR TAX SHELTER LOSSES," is ambiguous. That argument is not well taken. Contract headings cannot be used to alter or replace the detailed text of a contractual provision, especially when the text is complicated or complex. See Canada v. Am. Airlines, Inc. Pilot Ret. Ben. Program, 3:09-0127, 2010 WL 4877280 (M.D. Tenn. Aug. 10, 2010) aff'd as modified, 10-6131, 2014 WL 3320892 (6th Cir. July 9, 2014) ("[T]he descriptive heading, though clumsily drafted, is not part of the contract and its meaning is not controlling." (quoting Swiss Bank Corp. v. Dresser Indus., Inc., 942 F.Supp. 398, 401 (N.D.Ill.1996))). Accord Imation Corp. v. Koninklijke Philips Electronics N.V., 586 F.3d 980, 987 n. 3 (Fed.Cir.2009) (applying New York law) (court unwilling to resolve contract interpretation question based on section

11

headings "where doing so would conflict with the plain reading of operative language elsewhere in the contract"); Liberty Ins. Corp. v. J&A Gen. Contractors, Inc., 2014 IL App (1st) 132693-U ("[H]eadings in insurance contracts do not expand, or otherwise alter the scope of the policy's text."); In re G-I Holdings, Inc., 755 F.3d 195, 203 (3d Cir. 2014) (applying Delaware law) ("Contract headings do not constitute controlling evidence of a contract's substantive meaning.").

## C.   **Tax Preparation Was an Integral Step in the Overall Scheme**

FSG alleges that the Underlying Complaints contain claims outside the scope of the Tax Shelter Exclusion and that those claims should be covered under the Policy.  (Resp. to Mot. to Dismiss, ECF No. 19.)  FSG cites the Underlying Complaints, which allege that FSG prepared certain LLC tax returns, provided copies of those returns to plaintiffs in the Underlying Complaints, and advised plaintiffs to use those returns when filing their personal federal tax returns.  (See Lowry Pet., ECF No. 1-1, ¶¶ 154, 177; Khan Compl., ECF No. 1-1, ¶¶ 69, 100.) FSG argues that its "acts of tax return preparation can logically be separated from the acts of tax shelter promotion . . . ." (Resp. to Mot. to Dismiss, ECF No. 19 at 10.)

Taken out of context, FSG is correct that tax preparation can logically be separated from promoting an illegal tax shelter.  In the context of the Underlying Complaints as a

12

whole, however, the acts of tax preparation are not a separate source of harm.  The acts of tax preparation are alleged to be a "step" in the overarching tax shelter scheme.  (Resp. to Mot. for Partial Summ. J., ECF No. 22 at 7–8. See Lowry Pet., ECF No. 1-1, ¶¶ 154, 177; Khan Compl., ECF No. 1-1, ¶¶ 69, 100.)

Each Underlying Complaint describes the "Nature of the Claims."  The Lowry Petition alleges:

> Plaintiffs bring this action against Defendants based on their understanding of what the Internal Revenue Service ("IRS") has apparently concluded during the IRS' audit of Plaintiff's tax returns. . . . Plaintiffs seek compensatory damages against their professional advisers for damages arising from certain investment strategies that Plaintiffs entered into and utilized on their federal tax returns for the years 2000 through 2005 ("Investment Strategies") as set forth more fully below.

(Lowry Pet., ECF No. 1-1, ¶ 38.)

The Khan Complaint alleges:

> Plaintiffs seek compensatory damages against their professional advisors for damages arising from a series of tax-advantaged investment strategies using investments in distressed debt that Plaintiffs executed in 2002 and 2003 and utilized on their federal and state tax returns for the 2002 and 2003 tax years ("Distressed Debt Strategies").  The Defendants and Other Participants jointly and in concert developed, promoted, sold, and implemented the Distressed Debt Strategies.

(Khan Compl., ECF No. 1-1, ¶ 20.)

In describing the alleged illegal tax shelter scheme (referred to in the Underlying Complaints as the Distressed Debt Strategy), the Lowry Petition lists, as the sixth step in the

scheme, the utilization of the fund tax returns. (Lowry Pet., ECF No. 1-1, ¶ 123 ("Sixth, the Fund sells the distressed debt at fair market value and Plaintiffs claim a loss based on the difference between the face value of the distressed debt and the amount received upon the sale of the distressed debt."[1]).) The Khan Complaint contemplates the same use of LLC tax returns as an integral step in the overall tax shelter scheme. (Khan Compl., ECF No. 1-1, ¶¶ 50, 81 (paragraphs 50 and 81 use identical language to describe the 2002 and 2003 strategies: "Fourth, the LLC sells the distressed debt at fair market value and the taxpayer claims a loss based on the difference between the face value of the distressed debt and amount received upon the sale of the distressed debt").)

The Lowry Petition alleges that "[t]he filing of these tax returns was the final step of the 2002 Distressed Debt Strategy." (Lowry Pet., ECF No. 1-1, ¶¶ 154, 177 (paragraph 177 alleges the same in the context of the 2003 Distressed Debt Strategy).) The Khan Complaint includes identical language. (Khan Compl., ECF No. 1-1, ¶¶ 69, 100.) Considering the tax return preparation allegations in the context of each Underlying Complaint as a whole, plaintiffs in the Underlying Complaints

---

[1] This paragraph in the Lowry Petition describes the 2001 Distressed Debt Strategy, as to which FSG is not a defendant. Paragraph 147 incorporates that description in describing the 2002 Distressed Debt Strategy, and paragraph 165 incorporates the description in describing the 2003 Distressed Debt Strategy. (Lowry Pet., ECF No. 1-1, ¶¶ 147, 165.)

allege that the filing of the tax returns was an integral step in the overall tax shelter scheme.

## D.   IRS Determination Alleged but Not Required

FSG argues that the Underlying Complaints do not allege that the IRS has determined that the strategies are "tax avoidance transactions, . . . [or that the strategies are] substantially similar to abusive tax shelters or listed transactions or are identified as such by notice, regulation, or other guidance under the tax law." (Resp. to Mot. to Dismiss, ECF No. 19, at 14.)

The Tax Shelter Exclusion applies if the transaction at issue is "determined by the IRS or state tax authorities to be a tax avoidance transaction." (Policy, ECF No. 1-1, at 55.) Alternatively, it applies if any "transactions . . . is [sic] substantially similar to abusive tax shelters or listed transactions or are identified as such by notice, regulation, or other guidance under the tax law." (Id.) The presence of the linking verb, "is," links the subject, "transactions," with the predicate adjective, "similar." (Id.) An IRS determination is not required to establish that transactions are "substantially similar to abusive tax shelters or listed transactions." (Id.)

To interpret the words, "substantially similar," as modifying the words, "determined by the IRS or state tax authorities to be," would not be reasonable. FSG notes that the

15

wrong form of the linking verb is used.   (Resp. to Mot. to
Dismiss, ECF No. 19 at 14.) FSG is correct that the word "is" is
used instead of the word "are," affecting subject-verb
agreement, but FSG would have the Court ignore the word
altogether and read the Exclusion as if the linking verb did not
exist. (Resp. to Mot. to Dismiss, ECF No. 19 at 14.)

FSG's interpretation requires a strained construction and
would create redundancy in the provision.   The provision would
cover "transactions . . . determined by the IRS or state tax
authorities to be . . . substantially similar to abusive tax
shelters or listed transactions or [transactions that] are
identified as such by notice, regulation, or other guidance . .
. ."  As FSG argues in its response, "A 'listed' transaction is
a 'reportable' transaction that the IRS has identified by
'notice, regulation, or other form of published guidance' to be
the same or substantially similar to one of the types of
transactions that the [IRS] has 'determined' to be a tax
avoidance transaction."  (Id.)  A requirement that the IRS must
determine that a transaction is "substantially similar" to
"transactions that the IRS has identified . . . to be . . .
substantially similar" would be redundant.

Even if the Tax Shelter Exclusion does require such a
determination, both Underlying Complaints allege that the IRS
has indeed determined that the strategies are illegal tax

16

shelters.    The  Lowry  Petition  states,  in  paragraph  246,
"Plaintiffs'  Investment  Strategies,  which  the  Defendants
designed,  marketed,  sold,  and  implemented,  have  been  determined
to  be  illegal  and  abusive  tax  shelters."   (Lowry  Pet.,  ECF  No.
1-1,  ¶  246.)   The  Petition  alleges  that  "[t]he  Defendants  . . .
knowingly  acted  in  concert  to  design,  market,  sell,  and
implement  the  Investment  Strategies,  which  according  to  the  IRS
are  fraudulent,  illegal  and  abusive  tax  shelters."[2]   The  Khan
Complaint  alleges  that  "the  Defendants  . . .  knowingly  acted  in
concert  to  design,  market,  sell,  and  implement  tax  strategies
that  the  IRS  has  concluded  are  fraudulent,  illegal  and  abusive
tax  shelters – the  Distressed  Debt  Strategies."   (Khan  Compl.,
ECF  No.  1-1,  ¶  182.)

The  Lowry  Petition  alleges  facts  sufficient  to  bring  the
claims  within  the  "substantially  similar"  provision  of  the  Tax
Shelter  Exclusion.    In  Paragraph  151,  the  Lowry  Petition
alleges:

> Defendants  were  aware  of  the  existence  and  effect  of
> the  applicable  portions  of  the  Internal  Revenue  Code,
> established  case  law,  common  law  doctrines,  IRS
> notices,  regulations,  and  IRS  authorities  that
> indicated  the  IRS  would  conclude  that  the  2002
> Distressed  Debt  Strategy  was  not  a  valid  and  legal
> transaction,  but  intentionally  failed  to  fully  analyze
> and  discuss  the  effect  of  these  authorities  on  the
> 2002  Distressed  Debt  Strategy  with  Plaintiffs.

---

[2]  The  Lowry  Petition  first  alleges  that  the  "IRS  has  indicated"  that  it  will
hold  that  the  strategies  are  "illegal  and  abusive  tax  shelters."   (Lowry
Pet.,  ECF  No.  1-1,  ¶  40.)    Later,  the  Petition  alleges  that  the  IRS  has
determined  the  strategies  are  illegal  tax  shelters.   (Id.  ¶¶  246,  288.)

(Lowry Pet., ECF No. 1-1, ¶ 151.)   The Khan Complaint alleges:

> the . . . Defendants never fully and properly
> disclosed to Plaintiffs the significance and existence
> of the published case law, common law doctrines,
> applicable portions of the Internal Revenue Code, IRS
> notices, regulations and other applicable authorities
> that clearly indicated that the IRS would conclude
> that the 2002 Distressed Debt Strategy was an illegal
> and abusive tax shelter.

(Khan Compl., ECF No. 1-1, ¶ 71.)   Plaintiffs in the Underlying

Complaints allege that the defendants (including FSG) knew the

strategies were substantially similar to other strategies that

the IRS had specifically determined to be illegal tax shelters.

**E.   The Claims are Within the Scope of the Tax Shelter Exclusion**

To be excluded from coverage under the Policy, the claims

in the Underlying Complaints must be within the scope of the Tax

Shelter Exclusion.   The claims must be

> based on, arising out of or in connection with the
> design, recommendation, referral, sale or promotion of
> any transactions which:
>> a.   are determined by the IRS or state tax
>>      authorities to be a tax avoidance
>>      transaction or [are] substantially similar
>>      to abusive tax shelters or listed
>>      transactions or are identified as such by
>>      notice, regulation, or other guidance under
>>      the tax law; or
>> b.   any tax transaction that is considered to be
>>      a reportable transaction under Treasury
>>      Regulation §1.6011-4(b) or any superseding
>>      law or regulation.

(Policy, ECF No. 1-1, at 55.)[3]

The overall tax shelter schemes are the basis of the claims in the Underlying Complaints.  Even the narrowest reading of the language in the Tax Shelter Exclusion would exclude those claims from coverage.[4]  The alleged tax shelter schemes are within the scope of the Tax Shelter Exclusion.

## F.   Concurrent Causation Doctrine Does Not Apply

FSG argues that the Concurrent Causation Doctrine applies. Under the Concurrent Causation Doctrine, when two or more risks constitute independent concurrent proximate causes of an indivisible injury, the insurance company is liable under the Policy so long as one of the risks is covered by the Policy and is a substantial factor in causing the harm.  U.S. Fire Ins. Co. v. Vanderbilt Univ., 82 F. Supp. 2d 788, 797-98 (M.D. Tenn. 2000) (applying Tennessee law) (finding that there was an independent concurrent proximate cause, but that the independent cause was not a substantial factor in causing the harm, so the Concurrent Causation Doctrine did not apply) aff'd, 267 F.3d 465 (6th Cir. 2001); Allstate Ins. Co. v. Watts, 811 S.W.2d 883 (Tenn. 1991) (holding that the Concurrent Causation Doctrine did

---

[3] Although Subsection B does not form a complete sentence, Continental does not contend that the Underlying Complaints fall within the scope of Subsection B.

[4] Even if tax preparation services were considered separate and distinct claims, they would be within the scope of the Tax Shelter Exclusion.  Because the Underlying Complaints allege that tax preparation was a step in the implementation of the abusive tax shelter strategies, the preparation of the LLC tax returns arises out of and is connected to the design and promotion of the alleged tax shelter schemes.

apply "where a nonexcluded cause [was] a substantial factor in producing the . . . injury").

FSG argues that the disgorgement claims in the Underlying Complaints are additional claims that are covered under the Policy. (Resp. to Mot. to Dismiss, ECF No. 19 at 11 n.2.) FSG notes that both Underlying Complaints allege that FSG charged excessive fees. (Id.) Although the Underlying Complaints allege that the fees were unethically high regardless of the legality of the Distressed Debt Strategies, the fees at issue are only the fees charged for the services allegedly performed in furtherance of the Distressed Debt Strategies. Those fees "arise[] out of" the alleged illegal tax shelter scheme.

The alleged excessive fees represent a relatively small portion of the overall injury. The Underlying Complaints do not allege that if the strategies were legal no fees should have been charged. They allege that the fees were higher than what was ethically proper. The alleged separate unethical behavior was responsible only for the portion of the fees above a reasonable amount. Even if the disgorgement claims could be said not to arise out of or in connection with the alleged tax shelter schemes, they would not be a substantial factor when considering the alleged injuries as a whole. The Concurrent Causation Doctrine does not apply.

**G.   No Breach of Implied Covenant of Good Faith and Fair Dealing**

FSG alleges that Continental breached its implied covenant of good faith and fair dealing.  (Compl., ECF No. 1.)  "[T]he implied covenant of good faith and fair dealing requires a party to act with good faith and in a commercially reasonable manner." Dick Broad., 395 S.W.3d at 672.  "[A] claim based on the implied covenant of good faith and fair dealing is not a stand alone claim; rather, it is part of an overall breach of contract claim."  Jones v. LeMoyne-Owen Coll., 308 S.W.3d 894, 907 (Tenn. Ct. App. 2009).  Because the Policy does not cover the claims in the Underlying Complaints, Continental's denial of coverage did not breach its contract with FSG or Continental's implied covenant of good faith and fair dealing.

**H.   FSG's Motion for Partial Summary Judgment**

On April 16, 2014, FSG moved for partial summary judgment, seeking a "declar[ation] that [Continental] owes FSG the duty to defend the Lowry and Khan lawsuits and that [Continental] has breached that duty by failing to defend either lawsuit."  (Mot. for Partial Summ. J., ECF No. 18 at 3.)  Because the Policy does not cover the claims in the Underlying Complaints, Continental does not owe FSG a duty to defend it.

## V.   Conclusion

For the foregoing reasons, Continental's Motion to Dismiss is GRANTED and FSG's Motion for Partial Summary Judgment is DENIED.

So ordered this <u>23rd</u> day of September, 2014.

<u>Samuel H. Mays, Jr.</u>
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE